UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**CHRISTINE M. STARCHER,**

**Plaintiff,**

    v,                                        Case No. 1:19-cv-01015-TPK

**COMMISSIONER OF SOCIAL**         **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

      Plaintiff Christine M. Starcher filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on June 4, 2019, denied Ms. Starcher's application for supplemental security income. Ms. Starcher has now moved for judgment on the pleadings (Doc. 8), as has the Commissioner (Doc. 9). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Defendant.

### I. BACKGROUND

      Plaintiff's application for supplemental security income was filed on April 30, 2015. She alleged that she became disabled on January 1, 2011. After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing held by video on September 6, 2017. A vocational expert, Nicholas Fidanza, also testified at the hearing.

      The Administrative Law Judge issued an unfavorable decision on September 14, 2017. He concluded that Plaintiff had not worked since the date of her application and that she suffered from severe impairments including lumbar degenerative disc disease, history of opioid abuse, anxiety disorder, and depressive disorder. The ALJ also determined that Plaintiff had been diagnosed with other impairments including a past fracture of the fibula, asthma, a torn rotator cuff, and left-sided pain, but that none of those impairments were severe. He also found that none of her impairments met the criteria for disability set out in the Listing of Impairments.

      Next, the ALJ concluded that Plaintiff had the ability to perform a reduced range of light work activity. She could do all of the physical demands of such work, but was limited to simple, repetitive tasks and could tolerate only occasional interaction with coworkers and the general public.

At the hearing, the vocational expert testified that some of Plaintiff's age (she was 43 on the date of the hearing), education, and work experience could not perform Plaintiff's past work but could do light, unskilled jobs such as electronics worker, small product assembler, and production assembler. He also gave the numbers in which all of those jobs exist in the national economy. The ALJ accepted this testimony, finding that Plaintiff could perform the light jobs identified by the vocational expert and thus was not disabled within the meaning of the social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts a single claim of error. She notes that the ALJ did not assign any significant weight to any of the medical opinions in the record, and for that reason must have improperly substituted his own lay judgment when crafting a residual functional capacity finding.

## II. THE KEY EVIDENCE

The Court will provide the relevant background for its decision by summarizing both the testimony given at the administrative hearing and the pertinent medical records. It will begin with the hearing testimony.

At the administrative hearing, Plaintiff testified that she graduated from high school and also had training to be a certified nursing assistant. That was her last job as well. She stopped working due to her nerves and inability to communicate with other staff members. She did work for a short period of time in a food processing plant but left that job as well.

Plaintiff said that she suffered from back pain which was worse in the morning. She took ibuprofen when it got to be severe. Her left shoulder also reacted to changes in the weather. That caused her problems in lifting her granddaughter, for whom she had been caring. She was not currently getting treatment for back or shoulder pain, but was receiving mental health counseling. She also had been prescribed medication for mental health issues and it seemed to help. Additionally, Plaintiff was on suboxone therapy for her opioid addiction.

Asked about daily activities, Plaintiff said that she shopped for groceries but had trouble carrying them up the stairs. She could sit in one place for fifteen minutes and could be on her feet for only ten minutes at a time. She was anxious and tearful about not getting to see her son and had difficulty being around people. Plaintiff spent four hours every day babysitting her granddaughter, and she had been going to Bible study and volunteering at a senior center. She also watched television, occasionally visited with friends, and took care of her dog. Lastly, she testified that she napped daily and had limited use of her left hand due to carpal tunnel syndrome.

The other witness at the hearing was the vocational expert, Mr. Fidanza. He first testified that all of Plaintiff's past work was done at the medium exertional level, and that if she were limited to light work she could not do those jobs. When asked if someone of Plaintiff's age,

education, and work experience who was limited to light work involving only simple tasks could do any jobs, he identified three - electronics worker, production assembler, and small product assembler. All of those jobs could be done by someone who could have only occasional or even incidental contact with coworkers and the general public. If the person needed a sit/stand option, 75% of those jobs would still be available. Lastly, he testified that all unskilled light and sedentary jobs required frequent bilateral manual dexterity and the ability to tolerate some level of work stress.

There are not a tremendous number of pertinent medical records. Mental health treatment notes show that Plaintiff did report crying jags relating to being unable to see her children and that she experienced mood difficulties, although those were improving. Her thought processes were described as clear and coherent but she did have some inattentive traits. She also reported back pain to her treating physician but objective tests like x-rays and an MRI did not show significant abnormalities other than degenerative disease at L5-S1. A physician's assistant, Candece Reid, made a note on May 27, 2016, that she had "filled out paperwork stating [Plaintiff[ is not physically fit to work long hours, standing or bending or pushing or pulling." (Tr. 451). There is also an evaluation done by a state agency reviewer, Dr. Butensky, stating that the file contained insufficient evidence upon which to evaluate Plaintiff's claim of disability arising from mental impairments. (Tr. 76-81).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);

*see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

Plaintiff argues, in her claim of error, that the ALJ did not have a substantial basis for determining her residual functional capacity.  Her argument is best summarized this way: "The ALJ discounted [the only two medical opinions] and interpreted the imaging and other evidence to determine an RFC based on his own read of the medical evidence.  This was error."  Plaintiff's memorandum, Doc. 8, at 9.  It is therefore important to explain how the ALJ arrived at that determination.

After summarizing Plaintiff's testimony and the medical evidence, the ALJ concluded that Plaintiff's own statements about her symptoms were not entirely consistent with the record - a conclusion Plaintiff does not contest.  The ALJ did, however, credit Plaintiff's statement that she experienced general discomfort when around strangers.  (Tr. 23).  He then gave no weight to Dr. Butensky's opinion that record was insufficient to make a determination about the functional limitations caused by Plaintiff's mental impairments because evidence received after the date of that opinion was "sufficient for such a determination...."  (Tr. 24).  Ms. Reid's opinion was given minimal weight because, according to the ALJ, she was not an acceptable medical source, her statement in the treatment notes was a summary of another document that is not part of the record, and it was vague, not containing any specific functional limitations.  The ALJ observed that another note in the record described this opinion as one of disability "on a limited basis" and that if it implied an inability to do light work, it was also inconsistent with the results of other physical examinations.  *Id*.  Based on this reasoning, the ALJ determined that Plaintiff could do light work with a few psychologically-based restrictions.  The Commissioner contends that this is a reasonable reading of the record.

This Court has spoken in the past to the question of when an ALJ may make a residual functional capacity determination which does not match any of the opinion evidence.  It said this about the Court of Appeals' decision in *Matta v. Astrue*, 508 Fed.Appx. 53 (2d Cir. Jan 25, 2013):

> *Matta*, like the present case, involved an RFC which took into account, but did not mirror, the opinions of a number of different sources. The Court rejected the identical argument made by Plaintiff here - that the ALJ must necessarily have used his own lay opinion to craft the RFC because it did not match any one source's opinion - holding that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he

was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This Court has routinely applied that holding in similar situations. *See, e.g., Allen v. Comm'r of Social Security*, 351 F.Supp.3d 327 (W.D.N.Y. 2018).

*Riley v. Comm'r of Soc. Sec.*, 2019 WL 5287957, at *4 (W.D.N.Y. Oct. 17, 2019). As the Court said, the applicable rule is that "in a case such as this, the ALJ, while entitled to disagree with the medical opinions, can do so only for reasons which have a sound basis in the record itself." *Id*.

The Commissioner justifies the ALJ's decision by noting that the physical examinations which Plaintiff underwent all showed essentially normal findings and that Plaintiff received only conservative treatment, but that the MRI evidence did demonstrate some discogenic disease, permitting the ALJ to conclude that a restriction to light work was appropriate. That conclusion was, argues the Commissioner, bolstered by the fact that Plaintiff's activities of daily living also showed that she could perform the functions required by light work. From a psychological standpoint, the Commissioner points to normal mental status examinations, improvement of Plaintiff's symptoms with treatment, the fact that her symptoms appeared to be responses to family situations, and the fact that she denied any anxiety or problems with memory or concentration, as evidence from which a reasonable person could conclude that Plaintiff had only a few mental functional limitations.

When this Court has applied *Matta* to reverse an ALJ's decision, it has typically done so when a claimant's condition changed or deteriorated after the last medical opinion was rendered and there had been no medical determination as to how the claimant's ability to function was affected. *See, e.g., George v. Comm'r of Social Security*, 2020 WL 1161016 (W.D.N.Y. March 11, 2020). That is not this case. It is, however, somewhat troubling that the ALJ in this case did not simply choose among competing medical opinions about functional capacity, adopting some portions and rejecting others - something that an ALJ, in the course of resolving conflicts in the evidence, is entitled to do - but rather rejected almost every portion of the only two medical opinions, one of which was, strictly speaking, not an opinion about functional capacity at all, but simply a statement that the record was not sufficient to make a reasoned determination. However, the Court concludes that the ALJ had a substantial basis for making his ultimate determination.

It is worth recalling that "[t]he ALJ's RFC assessment is step four of the five step analysis. Thus, the Plaintiff has the burden to prove disability within the meaning of the Act." *Santiago v. Comm'r of Soc. Sec.*, 2020 WL 1922363, at *7 (S.D.N.Y. Apr. 21, 2020). The evidence provides little support for the proposition that Plaintiff is more limited that the ALJ thought she was. As noted, there are very few, if any, findings from medical examinations that support significant exertional limitations. Plaintiff was doing jobs at the medium exertional level before she stopped working, and she did not identify any physical reasons for leaving employment. Although she claimed to have problems getting along with others at work, the ALJ took that factor into account by restricting her to jobs which required only occasional contact

with coworkers and the public.  She did perform daily activities, including caring for her granddaughter, which replicated many of the exertional demands of light work.  Nowhere in the record is there any indication of significant mental functional limitations, and particularly none that exceeded in severity those imposed by the ALJ.  On this particular record, therefore, the ALJ's residual functional capacity finding was supported by substantial evidence, and is therefore not a finding which can be reversed by this Court under the applicable legal standard.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 8), **GRANTS** the Defendant's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner.

                                           **/s/ Terence P. Kemp**
                                           **United States Magistrate Judge**